WILLIAM WILMERTON

v.

SAMUEL SAMPLE.

*Malicious Prosecution—Instructions—Erroneous Assumptions in—Prolixity and Argumentative Character of—Evidence—Introduction of Record to Show Plaintiff's Acquittal.*

1.  Although instructions contain correct propositions of law, yet where such propositions are repeated so often and in so many different forms by the court as to assume the character of an argument from the court, such instructions are open to serious criticism.

2.  In an action for malicious prosecution, where the plaintiff had been arrested for malicious mischief, an instruction that a person who is in possession of property, claiming to be the owner of it, can not be guilty of malicious mischief in destroying the same, nor of larceny in regard to the same, is erroneous in that it ignores the question whether the claim of ownership is made in good faith.

3.  Instructions in the case at bar *held* to have been erroneous, in that they assumed the existence of material facts which were in dispute and were based upon hypotheses which were unsupported by any evidence.

4.  Whether it was error to admit in evidence the record of the trial and acquittal of plaintiff on the indictment for malicious mischief, *quære*.

[Opinion filed December 11, 1890.]

Appeal from the Circuit Court of Mercer County; the Hon. Arthur A. Smith, Judge, presiding.

Messrs. J. H. Connell and J. M. Brock, for appellant.

Messrs. Bassett & Bassett, for appellee.

C. B. Smith, P. J.  This was an action on the case.  The declaration contains seven counts.  The first charges appellant with assaulting and beating appellee.  The second with assaulting appellee, and taking him before a justice and imprisoning him without probable cause.  The third with committing a trespass upon appellee's house and destroying doors and windows.  The fourth with trespassing on the land of appellee and destroying grass, corn, etc.; and the fifth with destroying appellee's trees.  We do not understand that any serious effort is made to sustain this judgment under any of the first five counts, and even if there were any such claim it is clear there is no sufficient evidence in the record to justify such claim.  The sixth charges that appellant went before a justice and falsely and maliciously procured the arrest and imprisonment of appellee without probable cause, and the seventh that appellant falsely and maliciously and without probable cause went before the grand jury and procured an indictment against appellee for malicious mischief.

The general issue was filed and upon a trial the plaintiff obtained a verdict for $481, and after overruling a motion for a new trial the court gave judgment upon the verdict.  The record is now brought here by appellant, who insists that the verdict is against the evidence and that the court erred in giving and refusing instructions and in receiving and rejecting evidence to the prejudice of appellant.

The record in this case shows that this controversy is the final result and culmination of a long effort on the part of appellee to get the title to certain land of which appellant claimed to be the owner, through judicial proceedings. Appellant was claiming the title, and the right to possession at least, of one forty-acre tract upon which a house stood.

This house had been occupied by a tenant of appellee. Appellant had given this tenant notice to quit and surrender possession to him. The tenant left and before appellant took actual possession of the land appellee went and practically destroyed the house and so mutilated it that it was not and could not be occupied. He chopped down some of the doors and windows. Mutilated the plastering, tore off the casings to the doors and windows, tore off the weather boarding and carried the doors of the house home with him and concealed them in a dark cellar. He also chopped down a number of fruit trees, grape vines, etc., about the house. For the injury to the house and orchard appellant had him arrested for malicious mischief, and for carrying away the doors and concealing them, appellant had him arrested for larceny. On a trial for malicious mischief appellee was acquitted and the prosecutors *nollied* the indictment charging appellee with larceny.

On the trial of this cause the evidence was somewhat conflicting upon the material questions involved, but as to the weight or value of it we express no opinion, inasmuch as the case must be remanded for another trial. The real and substantial question arose on the 6th and 7th counts, charging appellant with malicious prosecution and false imprisonment without probable cause. To justify a recovery under these counts the proof must show both malice and want of probable cause. Whether either of these necessary elements existed in this case was hotly contested on both sides, and it was earnestly denied by appellant. It was therefore important that the law should have been accurately declared to the jury. This we think was not done in several of the instructions. Twenty-two long and elaborate instructions were given for the plaintiff, and so far as we can see or are advised by the record, exactly as submitted by counsel for appellee. Without stopping to criticise all this mass of miscalled instructions, we think that it must have impressed the jury more like an argument from the court in behalf of the plaintiff, than a simple, short and direct statement of the law as applicable to the facts in evidence. Many of these contain cor-

rect statements of the law, to which, standing single or in company with a reasonable number, no objection could be taken; but when correct propositions of law are repeated so often and in so many different ways by the court as to bear and assume the character of an argument from the court, then they are open to serious criticism and are obnoxious to any correct practice in instructing a jury. But aside from this objection going to the number, repetition and argumentative character of the instructions given for plaintiff as a whole, several of them were erroneous.

The 13th was as follows:

" If the jury believe from the evidence in this case that the defendant knew, or had good reason to know, that the plaintiff was in possession of the real estate and personal property which it was charged he maliciously injured, claiming to own the same at the time the criminal charge was alleged to have been committed, then there was no probable cause for the prosecution."

This instruction is open to two objections. The jury are told that if the plaintiff was in possession of the property, claiming it, then there was no probable cause for the prosecution without reference to the fact whether appellee was claiming in good or bad faith. The mere possession and claim of ownership in property is not of itself conclusive of his right to it as against a better or rightful owner, nor as against such better title, authorizes him to destroy it. Such possession and claim of ownership must be made in good faith and in an honest and reasonable belief that it is his own property and that he has a right to injure or destroy it. After announcing this erroneous principle of law the court then declares, as a matter of fact, that if such claim was made then there was no probable cause for such arrest. Whether the facts all considered or any of them furnished ground for believing there was probable cause for the arrest, was for the jury and not the court. This instruction was highly prejudicial to the defendant, and well nigh took the case from the jury. There was no denial that the plaintiff in that case was in possession and claiming some kind of right at the time of the injury to the house and taking away the doors, but whether

he had any reasonable ground for making such claim, and whether, in the light of the undisputed facts, such claim was an honest one, ought to have been referred to the jury. The proof is clear, that he dismantled the house and chopped down the orchard and vines. Whether such conduct by appellee toward this property, which he now claims was his own, and that he had a right to destroy it, was consistent with an honest claim of ownership in himself, ought to have been submitted to the jury, and it was error for the court to take it away from them and decide the question for them.

The 14th instruction is as follows:

" While the law is that a person is not guilty of the charge of false imprisonment, where the arrest and imprisonment are made under the color of legal process, yet, although the process may have been issued regularly, by a competent officer, the jury are instructed that the person who procures such process, for the purposes of having another arrested and imprisoned, and makes a false affidavit for that purpose, knowing it to be false, in order to obtain an advantage, or to force the person arrested, to surrender his possession, is guilty of the abuse of process, and can not justify under such process."

This instruction assumes that appellant procured the process for an unlawful use, and with intent to make an illegal use of it, without any proof whatever that such was the fact. It also assumes that appellee had made a false affidavit to procure it instead of leaving that question to the jury.

The 15th and 17th instructions are both bad, because they inform the jury that if the plaintiff was using the process for the purpose of trying to get possession of the land where the house and orchard stood, then such use of such criminal process was illegal. There is no proof in this record that appellant had any such purpose in suing out the process, and the only use such instructions could have was to influence the jury against appellant.

The 19th instruction is as follows:

"The jury are further instructed that if they find the defendant guilty of malicious prosecution, as charged in the plaintiff's declaration, they will, in assessing the plaintiff's

damages, allow him for such amount as they think from the evidence will compensate him for his loss of time, his expenses in defending against the malicious prosecution, and any other damages he may have actually suffered, if any, and in addition thereto, they may also allow such further sum as damages, as they may think is right, from the proof, as smart money, or exemplary damages, not exceeding altogether the sum of $5,000; and in estimating the damages, the jury may take into consideration the standing of the parties in the community, the physical and mental anguish that he suffered on account of such arrest, imprisonment and prosecution, if any, and the financial condition of the defendant herein, and fix the plaintiff's damages at such sum as will not only compensate the plaintiff for all his loss and suffering, but will be a sufficient punishment to the defendant for his malicious act."

This instruction allows appellee to recover for all his expenses connected with the transaction without reference as to whether or not they were necessary in his defense or otherwise. This was too broad. It should have been limited to his necessary and reasonable expenses, incurred by reason of the alleged wrongful acts. The last clause of the instruction seems to be a direct declaration by the court that the act of the defendant was malicious.

It is hardly necessary to add that such an instruction is erroneous. The 21st instruction is as follows:

"The jury are instructed as a matter of law, that a person who is in possession of property, claiming to be the owner of the same, can not be guilty of malicious mischief in destroying such property, nor can he be guilty of larceny in regard to such property."

What we have said in discussing the thirteenth instruction applies equally to this. It was error to give it. Exceptions were taken by appellant to many other instructions given for appellee, but a discussion of all of them would lead us into too much prolixity. What has been said relating to them as a whole, and as to those we have specifically mentioned, will sufficiently indicate our views of the law. On behalf of the

defendant twenty instructions were asked, and nine of them given and eleven refused. In connection with some of the refused instructions it is proper to refer to certain evidence offered by appellant and refused by the court. It appears from the record that appellant obtained title to that part of the land on which the house stood through a sheriff's sale and deed. The execution on which the sale was made was issued after a year had elapsed from the date of the judgment. Appellant offered this deed in evidence to show title in himself, but the court rejected the evidence. This evidence certainly tended to contradict the theory of appellee, that he himself owned the house and might therefore destroy it. The deed was good until it was vacated or set aside by a court of competent jurisdiction (Hernandez v. Drake, 81 Ill. 43), and it was error to refuse it. It should have been permitted to go to the jury, and then the instructions asked relating to the matter should have been given. Many of the instructions asked for by appellant were also open to the objection of being argumentative, and of being repetitions of each other.

Before passing from the consideration of these instructions, we can not forbear expressing our strong and emphatic disapprobation of giving to the jury such a heterogeneous mass of ill digested and multifarious instructions. Instead of instructing the jury upon the very few and very plain principles of law involved in the case, they could scarcely fail to mislead and confuse the jury. Such practice scarcely ever fails to result in error. The court has ample power to protect itself from such abuse and should not hesitate to do so. Appellant again insists that the court erred in admitting in evidence the record of the trial and acquittal of appellee on the indictment for malicious prosecution, and also showing the record of *nol. pros.* on the indictment charging appellee with larceny.

This was also error on the part of the court. Appellant was not bound by that judgment. He was not a party to it, and although a prosecuting witness, he had no other connection with it. He had no control over the action of the court

Wilmerton v. Sample.

or either of the parties. The introduction of the judgment of acquittal in the malicious prosecution case, together with the finding of the jury that appellant, the prosecuting witness, had acted maliciously in the prosecution, and a judgment against him in costs, could not fail to have a most damaging effect on him, before the jury, and no instruction of the court that such judgment was introduced for the simple purpose of showing that such suit was ended, could prevent the jury from knowing that the prosecuting witness and appellant here had been deliberately adjudged guilty of malicious prosecution in another suit. The exhibition of the contents of that record was wholly unnecessary to prove that suit was ended. The simple fact that the prosecution was ended was all appellee had to prove, and there can be no possible objection to the clerk or anybody else who knows the fact stating that that suit was ended, and a final judgment rendered in it without showing the record at large. This precise question has been twice deliberately considered by our Supreme Court, and the rule we have here followed declared by them to be the law in the case, and the introduction of the record expressly held to be erroneous. Corbley v. Wilson, 71 Ill. 209; Skidmore v. Bricker, 77 Ill. 164; and the same rule is laid down in Wharton on Evidence, Sec. 777. In the case of Skidmore v. Bricker, *supra*, the record there shows that the circuit judge who tried the case below expressly instructed the jury that such record was introduced for the sole purpose of showing that the prosecution was ended.

The ninth of appellant's refused instructions informed the jury that if they believed from the evidence that appellant acted in good faith and upon probable cause that he should be acquitted. This was the law, and it was error to refuse it.

. It appears that counsel for appellee were dissatisfied with the abstract prepared by appellant, and have themselves prepared a fuller abstract of the record, and now ask that costs of it be taxed to appellant. We think there was no necessity for this second abstract. The only useful purpose it served was to show, if possible, a little fuller, the many gross and glaring errors in this record. Appellant's abstract was full enough

for that purpose, and we think for all purposes a reasonably fair abstract. The cost of the second abstract will be taxed to appellee.

For the errors stated the judgment will be reversed and the cause remanded.

*Reversed and remanded.*

LACEY, J.  I concur in the reversing and remanding of the case but dissent as to the rule laid down in the opinion of my brother Smith, that it was error to introduce the record of the judgment of acquittal in order to show that the prosecution had ended. I think the verdict and that part of the judgment record that shows that the jury found that the prosecution was malicious, ought not to have been admitted, for that was unnecessary and it was incompetent to prove malice in that way. But, in regard to the record showing the acquittal and discharge of the plaintiff, I think it was not only admissible but it was the only way it could be proved. It could not be shown by parol as will be seen by the following authorities: 2 Greenleaf on Ev., Sec. 452; 3 Phelps on Evidence, 568; Cole v. Hauks, 3 Monroe, 208; Dougherty v. Darsey, 4 Bibb. (Ky.); Long v. Rodgers, 19 Ala. 328; Katherman v. Sittzer, 7 Watts, 191; Store v. Crocker, 24 Peck, 81; Comisky v. Breen, 7 Ill. App. 369, and many other cases might be cited. I do not understand that there is any decision to the contrary which holds that the contents of a record may be proven by parol unless the one cited in our own statute be so considered. If, then, the termination of the prosecution can only be shown by the record, how can it be shown at all unless the record of acquittal is introduced? I do not think that any serious difficulty would arise by the introduction of such record if the jury is instructed by the court as to its purpose. I think there must have been something in the case decided by the Supreme Court that made it improper in that case, but I can not see how such a rule could be held as a general one, as it would violate one of the best known and fundamental rules of law which is recognized by all courts of judicature. In Anderson v. Friend, 85 Ill. 135, the Supreme Court held,

that " want of probable cause is not shown by the acquittal of the accused," but no objection was raised that the record of acquittal was introduced in evidence to show the termination of the prosecution.

UPTON, J. I concur in the foregoing opinion of Judge Lacey. The termination of the original prosecution was a matter of record, and could only be shown by the record. No injury could result to either party from its introduction, and it is apprehended that the court could, upon its introduction and by an instruction to the jury, limit its application to the single purpose of showing that prosecution was ended and to that fact only. In that view it was proper to show by the record that the prosecution complained of was *nolle prossed* and so ended.